PETER LAURENCE CARR IV (#256104)
NA'SHAUN LAMAR NEAL (#284280) *application pro hac vice pending*
**SIAS | CARR, LLP**
3756 Santa Rosalia Drive, Suite# 326
Los Angeles, CA 90008
Telephone: (310) 400-5890
Facsimile: (310) 400-5895
pcarr@siascarr.com
nneal@siascarr.com
Counsel for Plaintiff KYLAH ROBINSON
as successor-in-interest of the Estate of CHARLIE McCLENDON

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KYLAH ROBINSON, as successor-in-interest of the Estate of Charlie McClendon,

Plaintiff,

v.

EDMUND GERALD BROWN, JR., individually and in his official capacity as Governor of the State of California; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR); SCOTT KERNAN, individually and in his official capacity as CDCR Secretary, DANIEL PARAMO, individually and in his official capacity as warden of RJD; CORRECTIONAL OFFICER MADARA, individually and in his capacity as a correctional officer ; and DOES 1 through 10 inclusive,

Defendants.

Case No.: '18CV0121 BAS RBB

**COMPLAINT**

**DEMAND FOR JURY**

**INTRODUCTION**

1. This complaint arises out of Defendants' refusal to provide the decedent, Charlie McClendon ("Mr. McClendon"), with the necessary medical care while he was in the Defendants' custody, care, supervision, control, and protection.

2. MR. MCCLENDON was a 21-year-old man with a significant medical history of bipolar disorder. On April 18, 2015, MR. MCCLENDON was pronounced dead at Sharp Grossman Hospital after being found hanging and unresponsive in his cell while in Defendants' custody.

**PARTIES**

3. Plaintiff KYLAH ROBINSON is the mother of decedent, Mr. McClendon, and brings this action as successor-in-interest to his Estate. Plaintiff Robinson asserts all survival claims and rights under California law that survive Mr. McClendon's death pursuant to California Code of Civil Procedure §§ 377.20 et seq., 377.30 et seq. and 377.60 et seq. These claims are also asserted on behalf of Mr. McClendon on the basis of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("RA") and other state laws.

4. R.J. DONOVAN CORRECTIONAL FACILITY ("RJDCF") is, and at all times relevant to this lawsuit, a correctional facility that operates under the California Department of Corrections and Rehabilitation ("CDCR"), duly organized and existing under the laws and Constitution of the State of California. CDCR, at all times relevant, responsible for the hiring, retaining, training and supervision of the conduct, policies and practices of its employees and agents of RJDCF and all of its members, agents and employees.

5. Defendant Daniel Paramo is or was at the some time relevant to this complaint Warden of RJDCF. Accordingly, Plaintiff sues Paramo in his individual and official capacity.

6. Defendant Scott Kernan is or was at some time relevant to this complaint the Secretary of the CDCR. Upon information and belief, Kernan was informed in times relevant to claims alleged herein that CDCR's policies for monitoring persons with mental health emergencies/problems were inadequate and amounted to constitutional violations under the Eighth Amendment. Upon information and belief, engaging in actions that a reasonable person would know to be unconstitutional, Kernan allowed the inadequate monitoring and inadequate medical care to continue. Accordingly, Plaintiff sues Kernan in his individual and official capacity.

7. Defendants had notice about the ongoing inadequate supervision of persons experiencing medical health problems similar to Plaintiff, and took no action to ameliorate the inadequate monitoring.

8. Defendants had notice about the ongoing inadequate protections of potential suicidal inmates experiencing medical health problems similar to Plaintiff, and took no action to ameliorate the inadequate protections.

9. Governor Edmund Gerald Brown ("Brown") is or was at some time relevant to this complaint the governor of the State of California. Accordingly, Plaintiff sues Brown in his official capacity.

10. Defendant Officer Madarawas an employee and/or agent of Defendant CDCR, and acted within the course and scope of that relationship, including the custody, care, supervision, control, and protection of those incarcerated within RJDCF. Accordingly, Madara is being sued in his individual and official capacities.

11. Defendants DOES 1 through 10, inclusive, were each duly appointed and acting as guards, supervisors, medical doctors and nurses employed as such by Defendant CDCR in RJDCF, and at the time of the acts hereinafter complained of, each said Defendant acted in the course and scope of such employment.

12. The true names of Defendant DOES 1 through 10, inclusive, are not now known to Plaintiff, who therefore sues said Defendants under fictitious names; upon ascertaining the true name of a DOE defendant, Plaintiff will amend this complain, or seek leave to do so, by substitution for a said fictitious name.

13. At all times material herein, each Defendant acted as an employee, agent, representative and officer of every other Defendant herein, and acted within the course and scope of such employment and agency.

**VENUE AND JURISDICTION**

14. This Court has original jurisdiction under 28 U.S.C. §§ 1331, 1343 (a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States that include 42 U.S.C. §§ 12131 et seq. and 12181 et seq. and 29 U.S.C. § 794 et seq.

15. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367 (a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

16. The venue is proper in the Southern District of California pursuant to 28 U.S.C. §§ 1391 (b) and (e). This court is proper because Defendants reside in this district and the unlawful actions challenged occurred in this district.

**FACTS COMMON TO ALL COUNTS**

17. Mr. McClendon was a 21-year-old man with a medical history of bipolar disorder. At all times mentioned herein he was a California state prisoner, suffering from a serious but treatable mental illness. Upon his booking at RJDCF and thereafter, custodial staff and jail medical personnel knew or should have known, that Mr. McClendon had a serious but treatable medical and mental health illness.

18. Defendants were aware that suicide is leading cause of death in prisons with mental illnesses. As a consequence, Defendants BROWN, CDCR, and KERNAN, PARAMO, knew that policies and practices must be implemented to protect

inmates at risk of suicide, especially mentally-ill inmates known to have made previous attempts.

19. RJDCH misidentified Mr. McClendon as "Charlie McCledon" which made it impossible for Mr. McClendon's family to locate him on the inmate locator system.

20. While Mr. McClendon was an inmate at Defendant RJDCF, he was housed in their Enhanced Outpatient Program ("EOP") unit. The EOP unit was for inmates with psychiatric issues who were receiving various types of treatments. Although there were two bunk beds in his cell, Mr. McClendon was the sole occupant.

21. CDCR and DOES 1-10 assigned Mr. McClendon to a cell with a known tie off point that a ligature could be secured. CDCR and DOES 1-10 knew this cell was dangerous for suicidal inmate.

22. On April 18, 2015, Officer Madara conducted his first cell check of Mr. McClendon that night. Officer Madara observed a note hanging on the door of the cell indicating that Mr. McClendon was not taking his medication. However, Officer Madara did nothing in response to the note.

23. After conducting his first check and noticing the note, Officer Madara then noticed Mr. McClendon kneeling on the floor, leaning over the lower bunk bed. After Mr. McClendon did not respond to OFFICER MADARA's calls or knocks on the cell door, Officer Madara requested assistance to check on Mr. McClendon.

24. In Mr. McClendon's cell that night, there was fecal matter on towels and clothing next to the toilet. Additionally, the toilet was clogged with fecal matter and toilet paper, and a single hydroxyzine capsule was on the top bunk.

25. Upon entering the cell, the officers found Mr. McClendon kneeling on the floor, bent over the lower bed with a sheet looped around his neck, tied off in a knot around the upper bunk bed post. Officers cut the ligature just below the knot and pulled Mr. McClendon out of the cell.

26. After the officers' unsuccessful attempts at cardiopulmonary resuscitation and activation of the emergency response, medical staff arrived and initiated advanced cardiac life support. Mr. McClendon was then transported from his cell to the facility's medical unit via ambulance. Despite resuscitation efforts, Mr. McClendon failed to respond and was pronounced dead at 11:25 p.m. by Dr. Vu of Sharp Grossmont Hospital.

27. An autopsy was performed and the toxicology studies detected no alcohol or other common drugs of abuse.

28. Without attempting to notify Mr. McClendon's family members, Defendant COSD cremated the body of Mr. McClendon.

29. In April of 2015, Mr. McClendon's family became concerned about his health and well being, and began trying to locate the whereabouts of Mr. McClendon.

30. Plaintiff Kylah Robinson, the mother of decedent Mr. McClendon, did not learn of her son's death until January 25, 2016.

31. Mr. McClendon's unfortunate death comes at the heels of a long line of documented institutional failures at California prison system's treatment of mentally ill inmates as set forth in the ongoing class action lawsuit *Coleman v. Brown*, 2:90-cv-0520, in the United States District Court for the Eastern District of California.

32. Prior to Mr. McClendon's death, he exhibited many of significant risk factors indicating suicidality (age, ethnicity, nature of charges, mental health, recentness of suicidal ideation).

33. Accepted and proven suicide prevention protocols include frequent observation by staff, not leaving the inmate alone in his cell, making sure the individual is medication compliant, that the person be competently treated assessed, that they be issued clothing and bedding which are tear resistant to make

it difficult or impossible to fashion a ligature and that the cells not have points of attachment for ligatures.

34. Mr. McClendon was prescribed psychotropic medications, which were needed to and according to his medical records known to help prevent him from attempting suicide.

35. At the time of his death, Mr. McClendon was refusing to take his essential psychiatric medication.

## TIMELINESS OF PLAINTIFF'S CLAIMS BY DELAYED DISCOVERY

36. Pursuant to the delayed discovery of accrual, Plaintiff's May 7, 2017 complaint is timely for pleading purposes based on the following facts;

a. Defendant CDCR was in possession of Mr. McClendon's s body and had sole knowledge of his death;

b. Defendant CDCR did not inform Kylah Robinson of her son's death until January 25, 2016.

## FIRST CAUSE OF ACTION – 42 U.S.C. § 1983, POLICY CUSTOM OR PRACTICE CAUSING VIOLATION OF CIVIL RIGHTS

**(by Plaintiff KYLAH ROBINSON in her capacity as successor-in-interest to the Estate of CHARLIE MCCLENDON, against all Defendants Brown, CDCR, Kerren, Paramo and DOES 1-10)**

37. Plaintiff incorporates by reference each allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

38. At all relevant times referred to herein, Defendants Brown, CDCR, Kerren, Paramo through their policymakers responsibilities deprived Mr. McClendon of his rights, privileges and immunities secured by the Fourteenth and/or Eighth Amendments against cruel and unusual punishment under the United States Constitution, by maintaining and enforcing a custom, policy and/or practice of hiring and retaining custodial or medical personnel who are predisposed to deny or delay pretrial detainees and prisoners at the RJDCF access to medical attention or

failing to provide medical attention for serious medical and mental health conditions, failing to properly classify, house or monitor pretrial detainees and prisoners in violation of their constitutional rights by using unreasonable force and excessive force, such as Mr. McClendon, suffering from mental health disabilities and of permitting, condoning, and ratifying constitutional violations by its custodial and medical staff.

39. Defendant CDCR has an unconstitutional custom, practice or policy of not providing continuity of care, access to medical care and treatment to inmates and detainees who were mentally ill or mentally disabled, suicidal or had suicidal ideations. Defendant also failed to supervise, train and corrective measures regarding the medical and custodial personnel at RJDCF in order to ensure appropriate and indicated communication and information transpired between the medical and custodial staff in order to prevent the deprivation of the constitutional rights of pretrial detainees and inmates, such as Mr. McClendon's constitutional rights to continuity of care, access to medical care and treatment and ensure that deputies and custodial staff did not physically abuse or punish mentally ill or mentally disabled inmates and pretrial detainees such as Mr. McClendon.

40. The unconstitutional policies, practices, customs promulgated, sanctioned or tolerated by Defendant CDCR, but are not limited to:

c. Defendant CDCR had knowledge, prior to and since this incident, of similar allegations of not providing continuity of care, access to medical care and treatment to inmates and detainees who were mentally ill or mentally disabled, suicidal or had suicidal ideations.

d. Defendant CDCR refused to adequately discipline individual employees found to commit similar acts of failing to monitor its inmates

e. Defendant CDCR refused to competently and impartially investigate allegations of misconduct alleged to have been committed by CDCR and its

employees related to failing to monitor persons in its custody that have mental health issues.

41. Defendants Brown, CDCR, Kernan, and Paramo were aware of the state prison system's inadequate protections for persons at risk of suicide. These Defendants are aware of their policies and practices related to preventing prisoner suicides in California's prison system because the system is under auspicious of the United States District Court for the Eastern District Of California Court in the matter of *Coleman v. Brown*, No. CIV S-90-0520 LKK JSM. As of April 5, 2013, the district court told defendants that "for over a decade a disproportionately high number of inmate have committed suicide in the California prison system.[1] As of January 14, 2014, the audit determined that Defendants have failed to implement suicide prevention programs as directed. As a result of the Defendants' failure to implement the suicide preventions, the audit revealed the suicide rates remained unchanged.

42. Defendants' customs, practices and/or policies were a moving force and legal cause of Mr. McClendon and Plaintiff's injuries.

43. Each individual Defendant acting in accordance with this custom, policy or practice acted with deliberate indifference to the needs of persons such as Mr. McClendon who was incarcerated at RJDCF. Plaintiff also alleges the conduct of each Defendant caused Mr. McClendon to suffer grievous harm, pain and suffering, and cruel and unusual punishment while he was located in RJDCF, and Plaintiff hereby petitions the Attorney General of the United States to institute a civil action or intervene in this action pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997.

---

[1] An Audit of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation by Lindsay M. Hayes, M.S. dated January 14, 2014, *Coleman v. Brown*, No. CIV S-90-0520 LKK JSM, ECF No. 5259.

44. As a result of the acts and misconduct of the Defendants complained of herein, Mr. McClendon died and suffered damages and injuries including, but not limited to, pain and suffering, anguish, depression, loss of life and deprivation of his constitutional rights in an amount not yet ascertained but to be proven.

45. As a result of the acts and misconduct of the Defendants complained of herein, Plaintiff has suffered loss of familial relations and deprivation of her liberty interest in an amount not yet ascertained but to be proven.

46. By reason of the aforementioned acts and omissions of the Defendants, Plaintiff was required to attain an attorney to initiate and prosecute the present action and to render legal assistance to Plaintiff so that she may vindicate the loss and impairments of Mr. McClendon's constitutional rights. Accordingly, Plaintiff requests payment by defendants of a reasonable sum of money for attorney's fees pursuant to 42 U.S.C. §1988.

47. The aforementioned acts of these Defendants were done recklessly, and by reason thereof, Plaintiff claims exemplary and punitive damages from the individual Defendants.

## SECOND CAUSE OF ACTION – 42 U.S.C. § 1983 FOR VIOLATION OF CIVIL RIGHTS

**(by Plaintiff KYLAH ROBINSON in her capacity as successor-in-interest to the Estate of CHARLIE MCCLENDON, against all individual Defendants)**

48. Plaintiff incorporates by reference each allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

49. Defendants CDCR, RJDCF, and DOES 1-10 failed to properly train, assign, supervise, and guide the custodial and medical staff personnel assigned to RJDCF, including but not limited to Defendant DOES 1-10, to take immediate measures on how to appropriately transfer out or deliver a detainee that is mentally incompetent, such as Mr. McClendon, to a state hospital for the care and treatment of the mentally disordered, or to any other available public or private treatment facility

approved by the community program director that will promote the Defendant's speedy restoration to mental competence, or properly place such a detainee on outpatient status as specified in Penal Code § 1600.

50. At all relevant times referred to herein, the Defendants have either participated in, known of, or should have known of their subordinate's deliberate indifference in failing to properly classify, monitor or house detainees suffering from mental health disabilities, denial of medical and mental health attention and the denial of access to medical and mental health care and treatment to inmate-patients, causing injuries or deaths.

51. Further, the DOES 1-10 that were deputies and supervisors who failed to supervise the medical services for detainee-prisoners and pre-trial detainees, such as Mr. McClendon, because RJDCF suffered from overcrowding. Consequently the facility suffered from inadequate staffing of medical personnel, inadequate leadership and inadequate supervision such that the medical services personnel, Defendant DOES 1-10, failed to properly classify, house or monitor prisoners suffering from mental health disabilities, failed to provide care or access to medical or mental health to inmate patients for serious but treatable medical and mental health conditions and operated without adequate safeguards, audits, or reporting requirements reviewable by supervisors.

52. At relevant times mentioned herein, Defendants DOES 1-10 had the duty:

a. To train, supervise and instruct deputies, jailers, nurses, physician assistants and physicians, to ensure that they respected and did not violate federal constitutional and statutory rights of detainees and prisoners, to ensure that their detainees and prisoners receive continuity of care and access to specialized medical care and treatment when indicated, to ensure that detainees and prisoners with mental illness were not punished for manifesting their illness;

b. To objectively investigate the use of cruel and unusual punishment; or the incident of in-custody death or injuries; or the failure to provide medical care and attention to injured or ill detainees or prisoners, which resulted in serious injury or loss of life; or the failure to periodically monitor the quality of medical care, attention and treatment provide to ill prisoners and detainees; or the failure to periodically monitor the adequacy of medical staffing to ensure the adequacy of medical care, treatment and attention rendered to ill prisoners and detainees; or the failure to comply with the statutory guidelines and regulations enacted for the protection of persons held in a custodial setting; and the failure to investigate allegations by prisoners or others alleging improper medical care or the failure to be seen by a physician or medical care provider.

c. To impose discipline for prior and ongoing violations and to establish procedures to correct past violations, and to prevent future occurrences of violations of constitutional rights to detainees by not condoning, ratifying, and/or encouraging the violation of the constitutional rights of prisoners and detainees, such as Mr. McClendon.

53. The Defendants mentioned in paragraph 52, breached their aforementioned duties by the following:

a. Failing to train, supervise and instruct deputies, nurses, physician assistants, physicians, and agents on the violations of the constitutional rights of Mr. McClendon and other detainees.

b. Failing to objectively investigate: the use of cruel and unusual punishment; various incidents of in-custody deaths or injuries of detainees; the failure to provide medical care and attention for injured detainees which resulted in serious injury or loss of life; the failure to periodically monitor a detainee or inmate's medical condition which resulted in serious injury or loss of life; the failure to periodically monitor the quality of medical care, attention and

treatment provided to mentally ill prisoners and detainees; the failure to periodically monitor the adequacy of medical staffing to ensure adequate medical care, treatment and attention rendered to mentally ill prisoners and detainees; or the failure to comply with the statutory guidelines and regulations enacted for the protection of persons held in custodial settings; and the failure to investigate allegations by prisoners or others alleging improper medical care or the failure to be seen by a physician or medical care provider.

c. Failing to impose discipline for prior violations, failing to establish procedures that correct past violations and failing to prevent future occurrences of violations of the constitutional rights of detainees, by encouraging the violation of the constitutional rights of Mr. McClendon and other similarly situated detainees.

54. As a result of the lack of aforementioned accountability measures, numerous medical providers and custodial personnel regularly delayed or denied medical and mental health care to inmate patients and engaged in a pattern and practice of failing to see inmate patients for serious but treatable medical and mental heal conditions, thereby violating patient-detainees' constitutional rights and rights granted under state and federal laws and departmental policy and procedures.

55. As a proximate and actual cause of the conduct of the Defendants, as described above, Mr. McClendon and Plaintiff have suffered damages and injuries as set forth above.

**THIRD CAUSE OF ACTION – 42 U.S.C. § 1983 FOR VIOLATION OF CIVIL RIGHTS**

**(by Plaintiff KYLAH ROBINSON in her capacity as successor-in-interest to the Estate of CHARLIE MCCLENDON, against Doe Defendants 1-10)**

56. Plaintiff incorporates by reference each allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

57. Defendant DOES 1-10 were physicians and nurses responsible with providing Mr. McClendon with medical and mental health care, treatment, follow-up and supervision. They knew, and/or should have known, that:

d. Mr. McClendon was suffering from a serious but treatable mental health illness;

e. That Mr. McClendon required reasonable medical care and treatment, supervision and monitoring;

f. That Mr. McClendon's medical and mental health condition required him to be monitored and supervised by medical care providers;

g. That without the indicated medical care and treatment, proper housing and suicide precautions, Mr. McClendon's condition would worsen;

h. That Mr. McClendon had a history of suicide ideation and/or attempts; and

i. That his deteriorating medical and mental health condition required that he be referred to a higher level of care and monitoring.

58. These DOE Defendants acting under the color of state law in their individual and personal capacities, deprived Mr. McClendon of his rights, privileges and immunities secured by the Fourteenth and/or Eighth Amendments against cruel and unusual punishment under the United States Constitution, by subjecting him or, through their deliberate indifference to his serious but treatable medical and mental health condition, allowing others to subject him to delay and/or deny Mr. McClendon access and delivery to medical or mental health care and treatment for a serious but treatable medical and/or mental health condition and access to family visits.

59. As a proximate and actual cause of the conduct of the Defendants, as described above, Mr. McClendon and Plaintiff have suffered damages and injuries as set forth above.

/ / /

/ / /

**FOURTH CAUSE OF ACTION – VIOLATION OF ADA (TITLE II) AND THE REHABILITIATION ACT**

**(by Plaintiff KYLAH ROBINSON in her capacity as successor-in-interest to the Estate of CHARLIE MCCLENDON, against all Defendants)**

60. Plaintiff incorporates by reference each allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

61. Mr. McClendon was a "qualified individual," with a mental illness and disability and medical impairments that limited and/or substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the ADA, 42 U.S.C. § 12131 (2) and under Section 504 of the RA, 29 U.S.C. § 794, 28 C.F.R. 42.540 (k). Mr. McClendon is also qualified as an individual with a mental and physical disability under California law, and he met the essential eligibility requirements of CDCR programs to provide access to medical and mental health care services for its inmates in their jails while they are in custody.

62. Defendants CDCR and RJDCF's medical and mental health services are places of public accommodation and are covered entities for purposes of enforcement under the ADA, 42 U.S.C. § 12181 (7)(F) and the RA, 29 U.S.C. § 794, as explicated by the regulations promulgated under each of these laws.

63. Defendants CDCR and RJDCF's jail mental health services "engaged in the business of . . . health care," custody for persons whose "operations" fall within the definition of "program or activity" covered by the RA, 29 U.S.C. § 794 (b).

64. Under the ADA, CDCR is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

65. Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such

forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

66. CDCR is mandated under the ADA not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182 (a).

67. 42 U.S.C. § 12182 (b)(1)(A)(iii) provides in pertinent part that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals."

68. Mr. McClendon was discriminated against in the provision of appropriate medical and/or mental health care services because of his disability in that he was not provided adequate services to accommodate his disability and treatment needs.

69. Upon seeing the note hanging on the cell door that said Mr. McClendon did not want to take his medicine during his first cell check, Officer Madara should have responded to this obvious need for services – Mr. McClendon was housed in a EOP unit, meaning he was receiving treatment, and he had a history of mental illness and treatment through medication. By walking away and not returning for another thirty minutes, Officer Madara exhibited a wanton disregard for Mr. McClendon's rights.

70. Mr. McClendon was denied the benefits of the services of CDCR, which deprived him of mental health services that would have provided delivery of treatment, follow-up, continuity of care and supervision. This denial of benefits and services was the result of Mr. McClendon's disability in that he was discriminated against because he was mentally ill, in that he suffered from

conditions in which a person, as a result of a mental disorder, is unable to provide for his basic needs and unable to advocate for himself.

71. As a proximate and actual cause of the conduct of the Defendants, as described above, Mr. McClendon and Plaintiff have suffered damages and injuries as set forth above.

**PRAYER**

WHEREFORE, Plaintiff prays for the following relief:

1. For compensatory, general and special damages against each Defendant, jointly and severally, amounts to be proved at trial;
2. Punitive and exemplary damages against individually named Defendants in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;
3. Prejudgment interest;
4. For cost of suit and reasonable attorneys' fees and costs as authorized by statute or law;
5. For restitution as the Court deems just and proper;
6. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

Dated: January 18, 2018

**SIAS | CARR LLP**

*/s/ Peter L. Carr, IV*

Peter L. Carr, IV
Na'Shaun L. Neal,
Counsel for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial.

Dated: January 18, 2018

**SIAS | CARR LLP**

*/s/ Peter L. Carr, IV*

Peter L. Carr, IV
Na'Shaun L. Neal,
Counsel for Plaintiff