# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLAH ROBINSON, as successor-in-interest of the estate of McCLENDON, CHARLIE<br><br>          Plaintiff,<br><br> v.<br><br>EDMUND G. BROWN, JR., *et al.*,<br><br>          Defendants. | Case No. 18-cv-00121-BAS-RBB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 7]** |

  Presently before the Court is a Motion to Dismiss by Defendants Edmund G. Brown Jr., California Department of Corrections and Rehabilitation, Scott M. Kernan, Daniel Paramo, and D. Madara. ("Mot.," ECF No. 7.) Also before the Court is Plaintiff Kylah Robinson's Opposition to the Motion. ("Opp'n," ECF No. 8.) Defendants did not file a reply. The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss.

1

## I. BACKGROUND

This case is brought by Plaintiff Kylah Robinson, as successor-in-interest of the Estate of Charlie McClendon. At all relevant times, Charlie McClendon was a young man "with a medical history of bipolar disorder" and an inmate at R.J. Donovan Correctional Facility ("RJDCF"). ("Compl.," ECF No. 1, ¶ 17.) Mr. McClendon was housed in RJDCF's Enhanced Outpatient Program unit, which is for "inmates with psychiatric issues who were receiving various types of treatments." (*Id.* ¶ 20.) Mr. McClendon had been "prescribed psychotropic medications, which were needed to and according to his medical records known to help prevent him from attempting suicide." (*Id.* ¶ 34.) Mr. McClendon was the sole occupant in his cell. (*Id.*) The cell had a "known tie off point [on which] a ligature could be secured" and was knowingly "dangerous for [a] suicidal inmate." (*Id.* ¶ 21.)

On April 18, 2015, Defendant Madara, a prison officer, conducted a cell check of Mr. McClendon. (*Id.* ¶ 22.) Madara "observed a note hanging on the door of the cell indicating that Mr. McClendon was not taking his [prescribed psychotropic] medication. . . . but did nothing in response to the note." (*Id.* ¶¶ 22, 35.) Thirty minutes later, Madara returned and "noticed Mr. McClendon kneeling on the floor, leaning over the lower bunk bed." (*Id.* ¶¶ 23, 69.) Mr. McClendon did not respond to Madara's calls or knocks, so Madara requested assistance. The officers entered the cell and found "Mr. McClendon kneeling on the floor, bent over the lower bed with a sheet looped around his neck, tied off in a knot around the upper bunk bed post." (*Id.* ¶ 25.) The officers found fecal matter as well as one hydroxyzine capsule in Mr. McClendon's cell. (*Id.* ¶ 24.)[1] The officers cut the ligature and attempted to resuscitate Mr. McClendon, but were unsuccessful, and Mr. McClendon was transported to the facility's medical unit. Mr. McClendon was pronounced dead at 11:25 p.m. (*Id.* ¶ 26.)

---

[1] Plaintiff argues it is reasonable to infer that the officers were not performing routine checks because the officers would have discovered the fecal matter placed around the cell in any routine check. (Opp'n 9.)

Mr. McClendon's family had attempted to locate Mr. McClendon beginning in April 2015, but RJDCF had misidentified Mr. McClendon by misspelling his last name in the records, therefore, his family could not locate him. (*Id.* ¶¶ 19, 29.) After Mr. McClendon's death, RJDCF did not attempt to notify Mr. McClendon's family, and cremated Mr. McClendon's body. (*Id.* ¶ 28.) Mr. McClendon's family learned of his death on January 25, 2016. (*Id.* ¶ 30.)

Plaintiff brings four causes of action, three of which are brought under 42 U.S.C. § 1983, and the fourth for a violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Defendants move to dismiss, arguing (1) all Defendants sued in their official capacity have Eleventh Amendment immunity; (2) the first cause of action fails to state sufficient facts of Defendants' failure to implement sufficient policies and procedures; (3) the second cause of action fails to state sufficient facts of Defendants' failure to train subordinates; and (4) the fourth cause of action fails to state a claim under the ADA and Rehabilitation Act.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III. ANALYSIS

### A. Eleventh Amendment Immunity

Plaintiff's first cause of action is brought against all Defendants and second cause of action is brought against the individual Defendants. Defendants argue that all Defendants sued in their official capacity have Eleventh Amendment immunity. The Court agrees. Defendant Paramo is the Warden of RJDCF and Defendant Kernan is the Secretary of CDCR. (Compl. ¶¶ 5–6.) They are therefore state officers. The general rule is that "[s]tate officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

The Supreme Court has held "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *see also Alabama v. Pugh*, 438 U.S. 781.

782 (1978) (per curiam) (holding a lawsuit against the State of Alabama and Alabama Board of Corrections was barred by the Eleventh Amendment). There are only three exceptions to this general rule. *Douglas v. Calif. Dept. of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001). First, the State may waive its Eleventh Amendment defense. *Id.* Second, "Congress may abrogate States' sovereign immunity by acting pursuant to a grant of constitutional authority." *Id.* (citations omitted). Third, a suit seeking prospective injunctive relief may proceed. *Id.*

Here, Plaintiff does not argue the State has waived its Eleventh Amendment defense, nor does she assert she is seeking prospective injunctive relief.[2] Instead, Plaintiff seems to argue indirectly that immunity is waived under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). But Plaintiff has not sued a municipality but has instead sued State officials and entities. *Monell* is inapplicable. Therefore, the Motion to Dismiss all Defendants in their official capacity for a violation of section 1983 is **GRANTED.**

Defendants also move to dismiss California Department of Corrections and Rehabilitation ("CDCR") as a Defendant. The Ninth Circuit has held that CDCR is an arm of the state and therefore immune from suit under the Eleventh Amendment. *Brown v. Cal. Dept. of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) ("The district court correctly held that the California Department of Corrections . . . [was] entitled to Eleventh Amendment immunity."); *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) ("[A]gencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." (internal quotation marks omitted).) The Court **DISMISSES** Plaintiff's section 1983 claims against CDCR.

///

---

[2] In any case, Plaintiff does not have standing to seek such prospective relief. A plaintiff seeking prospective injunctive relief must establish a "real and immediate threat of repeated injury." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007) (citation omitted). Because the injury here was perpetrated on the decedent, there is no risk of future harm.

**B. First Cause of Action**

The Court proceeds to analyze the allegations against Defendants Kernan and Paramo in their individual capacities.[3] *See Hafer*, 502 U.S. at 27 ("[O]fficers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'"). Plaintiff alleges Defendants violated Mr. McClendon's rights "secured by the Fourteenth and/or Eighth Amendments." (Compl. ¶ 38.)

**1. Failure to Implement Policies and Procedures**

To demonstrate a civil rights violation, a plaintiff must show either direct, personal participation or some sufficient causal connection between the defendants' conduct and the alleged constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011). This causal connection can be established "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978) (internal quotation omitted)). Additionally, a supervisor may be held liable if he implements a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotation marks and citation omitted).

Plaintiff does not allege Defendants Kernan and Paramo were personally involved in the violation; rather, Plaintiff proceeds under the latter form of supervisorial liability. Defendants Kernan and Paramo are the secretary of CDCR and warden of RJDCF respectively. (Compl. ¶¶ 5–6.) Plaintiff generally alleges these Defendants maintained unconstitutional policies, practices, and/or customs regarding suicide protections for

---

[3] The first cause of action is not brought against Defendant Madara.

persons at risk of suicide. (*Id.* ¶¶ 38–41.) Plaintiff alleges Defendants knew that certain policies must be implemented to protect mentally-ill inmates, such as:

> frequent observation by staff, not leaving the inmate alone in his cell, making sure the individual is medication compliant, that the person be competently treated assessed, that they be issued clothing and bedding which are tear resistant to make it difficult or impossible to fashion a ligature and that the cells not have points of attachment for ligatures.

(*Id.* ¶¶ 22, 33.) Plaintiff argues Defendants did not maintain these policies and instead maintained an inadequate policy of hiring staff who would deny detainees like Mr. McClendon medical attention and permit constitutional violations. (*Id.* ¶ 38.)[4] Plaintiff argues Defendants "were aware of the state prison system's inadequate protections for persons at risk of suicide" due to a court order to implement sufficient protections. (*Id.* ¶ 41.)

Indeed, Plaintiff is correct that a judge in the Eastern District of California addressed this issue in *Coleman v. Brown* and ordered CDCR to remedy its provision of mental health care to inmates. *See* Case No. 2:90-cv-520 KJM-DB (E.D. Cal.). Defendants argue these procedures have been adequately adopted, are now part of CDCR's procedures, and govern the care and treatment of suicidal inmates. (Mot. 13.)[5] Plaintiff disagrees and alleges

---

[4] Plaintiff dedicated a large part of her Opposition to arguing that Defendants are liable for the violation of Mr. McClendon's constitutional rights through their "omissions." (Opp'n 5–6.) Plaintiff cites *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175 (9th Cir. 2002), where the Ninth Circuit held "a plaintiff can allege that through its *omissions* the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." 290 F.3d at 1186. This case specifically refers to demonstrating <u>municipality</u> liability, and because Plaintiff here clearly has not named a municipality as a defendant, *Gibson* is inapplicable.

[5] Defendants request the Court take judicial notice of two documents: an order of reference from *Coleman*, and CDCR's Mental Health Services Delivery System Program Guide, 2009 Revision. (ECF No. 7-2.) Courts usually may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990.) "A court may,

7

18cv0121

Defendants failed to implement the *Coleman* suicide prevention programs as directed. In support, Plaintiff cites to an "Audit of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation" by Lindsay M. Hayes, M.S. dated January 14, 2014. (Compl. ¶ 41 n.1.)[6] Ms. Hayes performed the audit to determine whether CDCR had fully implemented its suicide prevention program. She concluded that although the *Coleman* guidelines were reasonable and comprehensive, "suicide prevention practices in the prisons often did not mirror [the *Coleman*] requirements." (Hayes Audit 3.) According to the audit, CDCR "has not yet fully implemented a thorough, standardized program for the identification, treatment, and supervision of inmates at risk for suicide." (*Id.*) This applied to RJDCF, the prison where Mr. McClendon was held.

It is plausible that as the warden of RJDCF and secretary of CDCR, Defendants Paramo and Kernan knew or should have known that failing to implement the *Coleman* requirements as evidenced in the audit would inflict constitutional injury onto suicidal

---

however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The *Coleman* order is a docket entry in the case. The docket and case files in a federal court case are matters of public record and are capable of accurate and ready determination. The Court may take judicial notice of matters of public record. *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 857 n.1 (9th Cir. 2008). The Court **GRANTS** Defendants' request to notice the order without accepting as true the contents of the document. However, Defendants provide no explanation why CDCR's program guide is properly subject to judicial notice. The Court **DENIES** Defendants' request to notice the CDCR program guide.

[6] The Court incorporates the audit by reference. Incorporation by reference allows a court deciding a Rule 12(b)(6) motion to dismiss to consider materials "properly submitted as part of the complaint." *Hal Roach*, 896 F.2d at 1555 n.19. A court deciding a Rule 12(b)(6) motion to dismiss may consider a document that is not attached to the complaint if the complaint "necessarily relies" on it and "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claims; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marker v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Plaintiff's Complaint refers to the audit, and the audit is clearly central to Plaintiff's claims that Defendants failed to implement sufficient policies. No party provided the Court with a copy of the audit, and the Court has located the audit in the *Coleman* docket through PACER. (*See Coleman*, ECF No. 5259.) The Court finds it proper to incorporate the audit by reference and refers to it herein as "Hayes Audit."

detainees like Mr. McClendon. Finally, Plaintiff has plausibly alleged the policy was a moving force behind Mr. McClendon's constitutional violation. *See Thomas v. Baca*, 514 F. Supp. 2d 1201, 1206 (C.D. Cal. 2007) (noting that the custom must be the "moving force" behind a plaintiff's constitutional injuries, which requires the plaintiff to establish that the custom is "closely related to the ultimate injury," and that the injury "would have been avoided had proper policies been implemented."). Had Defendants implemented the *Coleman* policies, it is plausible Mr. McClendon's harm could have been prevented, therefore, the allegedly insufficient policy is a moving force behind his constitutional violation. In sum, Plaintiff has plausibly pled a § 1983 supervisor liability claim against Defendants Kernan and Paramo. The Court **DENIES** Defendants' Motion to Dismiss Plaintiff's first cause of action on these grounds.

### 2. Excessive Force

Plaintiff vaguely mentions excessive force within the first cause of action, alleging Defendants deprived Mr. McClendon of his constitutional rights by, among other things "using unreasonable force and excessive force." (Compl. ¶ 38.) Defendants move to dismiss this allegation.

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, "objectively, sufficiently serious," and (2) the prison official possesses a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 824, 834 (1994). When prison officials are accused of using excessive force in violation of the Eighth Amendment, the question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically" to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citation omitted).

Defendants are correct that Plaintiff provides no allegations of any force used against Mr. McClendon, let alone excessive force. The Court **GRANTS** Defendants' Motion to Dismiss claims of excessive force and **DISMISSES** the claims **WITHOUT PREJUDICE.**

///

9

## C. Second Cause of Action: Failure to Train

A supervisor may be liable under section 1983 for failing to train subordinates when the failure to train amounts to deliberate indifference. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (citing *Canton*, 489 U.S. at 388). To establish a failure-to-train claim, Plaintiff must show that:

> in light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.

*Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). Ordinarily, a single constitutional violation by an untrained employee is insufficient to demonstrate deliberate indifference for purposes of failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Instead, a plaintiff must usually demonstrate "[a] pattern of similar constitutional violations by untrained employees." *Id.* "A plaintiff also might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

Plaintiff alleges CDCR failed to properly train staff "to take immediate measures on how to appropriately transfer out or deliver" a mentally incompetent detainee to a state hospital or facility that would help the detainee's mental competence, or place the detainee on outpatient status. (Compl. ¶ 49.) Defendants argue "[t]here are no facts showing Defendants' specific knowledge that their subordinates required training as to the specific treatment McClendon needed, or even how they were interacting with McClendon." (Mot. 23.) Indeed, Plaintiff provides no details to support her assertion of insufficient training. The audit alone, where the auditor generally found the prisons were not implementing the *Coleman* requirements, does not sufficiently allege that the Defendants in this case knew

their subordinates were improperly trained in any specific area. The Court **GRANTS** Defendants' Motion to Dismiss the second cause of action and **DISMISSES** it without prejudice.

### D. Fourth Cause of Action: ADA and Rehabilitation Act

This cause of action is brought under the ADA and the Rehabilitation Act.[7] Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), provides that "[n]o otherwise qualified individual with a disability, . . . shall . . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." "[T]here is no significant difference in the analysis of rights and obligations created by the two Acts." *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002).

Defendants first move to dismiss this cause of action because injunctive relief is not available to Plaintiff and her request is moot because Mr. McClendon is deceased. (Mot 16.) Plaintiff states she is "not seeking injunctive relief as to the ADA claim" and Defendants' position is therefore moot. (Opp'n 2 n.1.) "Injunctive relief is the sole remedy available to private parties under the Disabilities Act; it does not authorize a claim for money damages." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1174 (9th Cir. 2010). Because Plaintiff states she is not seeking this sole remedy, the Court **DISMISSES** her claim under the ADA.

---

[7] Plaintiff brings this cause of action against all Defendants and specifically refers to Defendant RJDCF within the cause of action. RJDCF is not listed as a Defendant in the caption of Plaintiff's Complaint but is listed under "Parties" and throughout the fourth cause of action. RJDCF is not a moving party in the present Motion to Dismiss and the Court does not address RJDCF in this Order.

11

Further, monetary damages are not available under Section 504 of the Rehabilitation Act because the federal government has not waived its sovereign immunity from suit. *Lane v. Pena*, 518 U.S. 187, 191–97 (1996). Plaintiff does not specify what remedy she seeks under the Rehabilitation Act. Any claims for monetary damages under the Rehabilitation Act are dismissed, and Plaintiff may seek equitable or injunctive relief only. *See SAI v. Smith*, No. 16-cv-1024-JST, 2018 WL 534305, at *10 (N.D. Cal. Jan. 24, 2018) (same); *see also Davis v. Astrue*, No. C-06-6108 EMC, 2011 WL 3651064, at *3 (N.D. Cal. Aug. 18, 2011) ("*Lane* did not foreclose the possibility that there could still be a private right of action under § 504 for injunctive or equitable relief.").

Given Plaintiff's concession that she is not seeking injunctive relief, the Court **GRANTS** Defendants' Motion to Dismiss this claim. The Court finds it possible Plaintiff could amend this cause of action, therefore, the dismissal is without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. The Court dismisses all Defendants sued in their official capacity, and Defendant CDCR, with prejudice. The Court dismisses counts two and four in their entirety without prejudice. The Court dismisses count one without prejudice to the extent it alleges excessive force but denies the Motion to Dismiss the remainder of the count to the extent it alleges a failure to implement policies and procedures.

If Plaintiff chooses to file an amended complaint, she must do so no later than November 12, 2018. If Plaintiff does not file an amended complaint by this date, Defendants shall file an answer on or before November 26, 2018.

**IT IS SO ORDERED.**

**DATED: October 12, 2018**

Hon. Cynthia Bashant
United States District Judge